matter, which is the matter of Tronox Incorporated. May it please the Court, my name is Luke McGrath from Dunnington, Bartholow & Miller, and I represent the AVOCA plaintiffs, and here today the AVOCA plaintiffs would like to focus the Court on the reversible error of the District Court decision based upon the fact that the claims that the AVOCA plaintiffs wish to pursue in the state court proceeding in Pennsylvania do not arise from any harm to the debtor in the Tronox bankruptcy, and the Paul decision of this Court would not be considered a type of claim that could become an asset of the debtor's estate. Does the complaint allege a conspiracy between the predecessors of New Kermacki and the debtors that actually, the debtor corporations that actually were involved in the release or the alleged release of the chemicals that caused the injury to your clients, does it allege a conspiracy between the two? Well, Your Honor, it would if we were allowed to have amended the complaint and go forward, but one of the problems with the District Court You've never made any effort to amend the complaint, have you? Yes, we submitted papers in Pennsylvania to reopen the case so we could submit an amended complaint, and it's at that point that the Kermacki folks filed the motion to enforce the injunction with the District Court. Did you argue to Judge Forrest that you were going to amend the complaint and submit to a post-amended complaint that you thought would take you outside the scope of the injunction? We never got that far. We had briefing, and we argued, and we asserted that we wanted to submit an amended complaint. I believe the appropriate procedure would have been for an amended complaint to be filed in Pennsylvania and let the State Court take the first shot. Were you on her part in not allowing you to do that? Did she not allow you to do it, or did you not ask her? I believe that we were not allowed to do that because of the posture of the case. We were in front of her. Your brief doesn't ascribe error to her in that regard, does it? It does not. There's not a specific reference, no. What are you talking about, then? You didn't say that she did anything wrong, so you can't come here and say that we should be thinking about what you might say in answer to my question. I think you have to say only what's in your complaint right now, don't you? Your Honor, I would respectfully disagree because we did, in front of the district court and in our briefing, say we wish to file amended complaint, we want to file amended complaint, but we're not allowed to. You haven't ascribed error to that here. You have to ask us and say there was a mistake that they did, and they didn't do it. So I guess it were to take what's in the complaint to figure out whether your claims are individual to you and against New Care McGee, separate and apart from being against the debtors, right? Your Honor, I don't think you have to do that because I think there's reversible error with regard to the failure for the court to limit her decision with regard to just enforcing an injunction. What the court did was it said, here's the injunction. Now I find that you don't have direct claims, and I'm going to—I'm sorry. I find that if you have direct claims, they would not be within the confines of the injunction. You can go forward. But then she entered into a plausibility analysis. Once she found that direct claims could go forward, she was done. She looked at the complaint. She had to decide what you were seeking, and she said that as you've pled it so far, all you're seeking is that you're, in essence, trying to attack the successor corporations as alter egos of the debtors. And that's no different than any other creditor who's—you have an individual claim based upon a tort claim, based upon chemical releases by the debtor, that the debtor did those things. The debtor also didn't pay their bills with regard to contract claims. The debtor also may have had a truck driver that ran over somebody, a separate tort claim like that. All those claims are individual to those particular creditors of the estate, but that doesn't make them separate from the estate if the claim to the third party is simply, well, the third party's just the alter ego. That's just another pot of money that the estate can have to satisfy the claims of those people who are looking to the Tronics debtors. So tell me how your claims are separate as pled in your complaint as to acts of New Kermagee or its predecessors. Well, I mean, I'm going to refer the court to the Emerald dissent, but I won't waste time with that. I've read Emerald three times. I think Emerald's rightly decided. And then I'm going to switch to the definition of trust derivative claims. In the trust derivative claims at A97, the definition of a trust derivative claim here is, and this is third line down, 1, 2, 3, from paragraph 1.82, at the end, the far right, arising from harm to any debtor or any debtor's estate. Now in this situation. It's the exact same language that happened to have been in the injunction in Manville, in the Manville case, which I was reversed at the United States Supreme Court about. So I mean, these arise from the debtor's activities, don't they? No, they don't. And in Manville, I do. Your claim for your injury is personal injury based on toxic torts, right? Right, which happened in 1956 through 1996. Then there's the transaction in 2001 and 2002. At that point, there's no harm to the debtor. And at that point, New Care McGee has direct liability, successor liability, and liability indirectly. Based on what? Based upon a letter to the EPA, December. Based on alter ego? No. First of all, they're a successor. Second of all, they've assumed the liability. New Care McGee is formed. And it- All claims of the debtors against New Care McGee. I'm sorry, I didn't follow that. There are ways of following the assets of the debtor to satisfy the debtor's obligations to creditors of the debtor's estate. And that's correct. And that's why part of what we would be asserting normally has been taken care of. But we have a situation where a non-debtor has rinsed itself of liability that it assumed in 2001. Before the harm to the debtor. The spinoff is in 2005, right? Before that spinoff, New Care McGee is assuming the liability. That becomes direct liability. That attaches. Let me stop you there and say that you've got a co, there's another creditor who has a contract claim against Tronics, and the same thing happens. And so now this contract creditor of Tronics wants to be able to sue separately because of the assumption of liability? No, because I think, A, I don't think they assumed those contracts, but B- No, no, no, I presume they did. Okay, okay, so I won't fight the hypothetical. But no, because a contract claim would fit under your paradigm of being common to all other creditors. This type of physical injury- Not common to you. Not common to you. You're a tort creditor. The truck driver, the poor fellow that gets run over by the truck driver that's working for Tronics, his is a separate claim. But he wants to sue the New Care McGee because New Care McGee took on, was a successor and took on all the liabilities of Tronics. It seems to me that's separate. It seems to me like the bankruptcy state's going to start to unravel now. No, it's not going to unravel because we would be forced. We'd be held to our proof in the Pennsylvania litigation. And we would have to show an assumption with regard to the Avoca plant. And we can show that. Your time's expired. I know you've got three minutes for rebuttal, and why don't we hear from the other side now. But I did want to ask you at the beginning of your rebuttal about our jurisdiction, our appellate jurisdiction in this case. Sure, I'll be prepared for that on rebuttal. Thank you. Mr. Gillian? Didn't need all of this. That's okay, you came prepared, there's nothing wrong with that. Good morning, your honors. So in the opening here, one of the key issues, I think, is what are the claims that the Avoca plaintiffs are alleging against New Care McGee? And a critical fact, undisputed, I think, is that the Avoca plaintiffs are not seeking a direct recovery for any independent wrongdoing by New Care McGee. This was a point that was conceded by them below. They conceded to Judge Forrest that New Care McGee never directly harmed them. And that- Where's that concession? Judge Forrest walks through it in pages 735 through 38, and 746 to 47 of her decision, where she pulls several transcript citations. There's a extended hearing in front of Judge Forrest. I remember that. Yes, so, and at that hearing, this isn't an outlandish concession, because as your honor noted, New Care McGee did not exist until 2001, but the operations of the Avoca plant ceased in 1996. So, any liability of New Care McGee is necessarily going to be indirect in this instance. But does that have been a decision by the Pennsylvania State Court on those claims? No, your honor, because that indirect liability claims, these derivative claims are in the heartland of what Judge Forrest's injunction is targeted to enjoin. What about the direct claims against New Care McGee? They conceded they don't have those direct claims. That's why they're just not on the table here. What we're dealing with are just alter ego, veil piercing, and successor liability claims as to my client. As they say to this court in their reply brief, they want to hold New Care McGee responsible for Tronox's torts because New Care McGee allegedly abused the corporate vehicle. That is a classic form of alter ego claim, a derivative claim like this court saw in the St. Paul case. So as this case has come up to the court, the key question really is, does this injunction cover derivative claims? The fight isn't over what are the claims that they've alleged, it's what does the injunction cover? And this injunction is just like the injunctions this court has approved, especially the one in the 2014 Madoff case. In fact, Judge Forrest made that link herself in the decision when she issued the injunction. Two years ago, she interpreted this particular injunction and said it has the same scope and the same effect as the Madoff injunction, which this court had affirmed just a few weeks beforehand. The two are coextensive because they both bar derivative claims, they both bar duplicative claims. They also have the same purpose. They came in in a bankruptcy in the context of a massive settlement in order to facilitate global peace for the settling third party. Their arguments to try to narrow this injunction are arguments that it only covers two particular claims, the fraudulent transfer and the fiduciary duty claims that were litigated in the adversary proceeding. But that doesn't scan even on the face of the injunction. Because the injunction says not just that it bars claims that were asserted in the adversary proceeding, but also claims that could have been asserted. And in fact, details for almost a page, all of the types of claims and remedies that it bars, including alter ego, veil piercing, and successor liability. Exactly what the Evoca plaintiffs have been complaining about from the beginning. So Judge Forrest had these concessions that there was no claims for direct recovery for any independent wrongdoing of New Kermagee, and in light of the fact that this injunction bars all derivative and all duplicative claims, she was right to decide and prohibit Evoca plaintiffs from filing new complaints against New Kermagee. I think you conceded this, or you mentioned this, and it shows up in Judge Forrest's decision. But if the allegation were that one of the corporations that were a predecessor to New Kermagee that was a parent to the debtors. And the allegation were that the parent directed the subsidiary to do X, Y, and Z, which caused toxic emissions. In other words, it was like a co-conspirator. Or because it was so much the dominant corporation over the surveyor. I understand your Honor's question. If after 2001- If that kind of allegation were there, such that it was the acts of the predecessor dominant corporation, that would be a different matter, wouldn't you agree? That could be a different matter, yes. I think we still have a question of whether or not it was duplicative, and whether or not it was extinguished in the bankruptcy case. But putting aside, if we're looking at sort of post-2001, did New Kermagee independently breach some duty that it owed? Did it direct its subsidiaries to do something? That would be a different and more difficult case for my- Confusion seems to me to come from the fact that people think of piercing the corporate veil to impute the acts of the servient corporation to the- For the parent. Many times it's an individual who's insulated himself or herself from liability by working through a corporation. But they've dominated the corporation in such a way they don't observe the corporate formalities, etc., etc., etc., that it's really just them. But as your Honor noted, in this case, those allegations would apply to all of the creditors of Tronux. So the purpose of piercing the corporate veil is expanding who's responsible, but not necessarily defining who the tort fees, in this instance, the tort fees are. Correct. The debtor is in the context of, let's say, a contract claim between the corporation. That's exactly right, which is why New Kermagee still exists to this day, and the Tronux debtors have gone through bankruptcy as a separate corporation. That seems to be the nature of the problem that the dissenter had in a moral. He had a hard time sorting through- Yeah, I think Judge Cowan's dissent in a moral had made two mistakes. First is, he was focused very much on the personal injury cause of action and not- Well, the majority also disagreed with him, so I'm not alone in this. He was focused on the personal injury cause of action itself and not the substance of it. And as this court said in the 2014 Madoff case, labels are not determinative. It's the substance that controls whether or not a claim is derivative or duplicative. And the substance, when you're going after a parent corporation, is an allegation of alter ego, a veil piercing, a successor liability. The personal injury cause of action isn't determinative. And if it were, as your Honor noted, every single creditor who has a personalized proof of claim against the debtor would have a personalized claim against the third party. And the whole concept of derivative claims would go away. The Senate Chair, Judge Stroni, asked a question that's troubling me too. You didn't make a motion to dismiss on jurisdictional grounds. You hinted at jurisdictional objection and both sides end up briefing it. Your Honor, we- Tell us, I mean- Sure. The jurisdictional point- Only if Judge Forrest has modified the injunction, I take it's your view. Only if she's modified it, do we have jurisdiction under 1292, is that right? That is our, yes, that's right. And we did assert jurisdiction in opposition to their motion to stay. The motions panel said that they wanted this to be considered by the merits, so we did not file a separate motion to dismiss at that point. Grateful for their deference. Yeah, but yes, our- Go back for a second, tell me where it was the plaintiffs conceded there's no claims, not subject to the bankruptcy. No direct claims. Right, so Judge Forrest pressed them multiple times at oral argument to identify what claims they had that weren't alter ego, that weren't successor, that weren't bail piercing. And they kept coming back to those exact same theories or citing evidence from before 1996 that just used the label Kerr-McGee. It doesn't seem they've abandoned it though, in their brief at page 43, they say, the district court, however, reached far beyond simply determining whether the injunction encompassed the claims before it. The district court determined that there could be no other claims. Your honor, I believe- The district court's extension of its jurisdiction is contrary to second circuit precedent and contrary to general jurisdictional principles. It sounds like they're still maintaining that there's some new claims. No, so what I believe they're challenging there is not that they have direct claims against my client, but that there are other unpleaded derivative claims that they should be able to file in a complaint. And then that Judge Forrest should have to wait for that complaint to get filed to then decide whether or not those derivative claims are acquired by the injunction. This goes to their theory that this injunction only covers just a handful of derivative claims and not the whole universe of derivative claims. So they think they should have a chance to replead and assert new derivative claims and then have Judge Forrest consider those after filing. Judge Forrest gave them multiple opportunities to identify what derivative claims that they would go plead. They had not only their complaint, which had been on file for 11 years, but they filed a motion to restore just a year ago. They had two briefs, including a sir reply in the district court. They had multiple opportunities to answer direct questions at the hearing in front of Judge Forrest. And then, your honors, they filed two briefs in this case. And the only claims that they've said that they wanted to assert against New Kermagee are alter ego, veil piercing, and successor liability claims within the heartland of the injunction. And in addition, so not only would it be futile to let them replead, but in addition, Judge Forrest found that the Avoca plaintiffs were engaged in gamesmanship, and that finding should not be treated lightly by this court. She took that additional fact finding to say that, you know what, I'm not going to give them that other chance because these guys are just playing games. In conclusion, your honors, this injunction was an important part of a fair and appropriate $5 billion settlement. Judge Forrest found when she issued this injunction that without it, New Kermagee would have paid billions of dollars for nothing. But their theory on this case is exactly the opposite, that New Kermagee paid billions of dollars for nothing. This injunction has an effect in barring these claims as exactly within the heartland of what this injunction was designed to stop. So we think that for that reason, the injunction hasn't been modified, and the court should dismiss the appeal or at least affirm the district court's judgment. Thank you. Thank you. Mr. McGrath, you have a few minutes. You want to talk about why we're here for a moment? Is it under 1291 or 1292A1 that you're claiming? Your honor, first we're here under 1291 because there was nothing left to do. This was a final decision. We were left with the Hobbesian choice of going through and following the court's injunction order and dismissing with prejudice claims that could never be brought back. Or filing an appeal. So we think because this was a final order, that would have had impossible repercussions for these 4,000- You could have ignored the order, and then they would have sought an order of contempt against you, like any other injunction case, which is not final until they issue contempt. If the court doesn't issue a contempt order, it's not final. We don't think the court requires us to go and actually go into contempt. Yes, it does. I mean, normally there's a permanent injunction, but there's no, and there's a claim of a violation of it, and then there's, but the court doesn't hold them in contempt. We say that you have to be held in contempt before there's jurisdiction. Don't we? Yes, you do, but in this situation- How is this different? Well, in this situation, there are two bases for your jurisdiction. One is that we believe it was a final order. The other would be that under 1292, we have a situation where we believe that Judge Forrest went beyond the injunction and expanded the injunction, and the main reason- I think it's to the merits anyhow. We'd have to figure out the merits of her determination. Right. And so it's basically the backdoor coming in. I would agree with that, which is why I'd like to turn back to the merits on two, at least two points. One, we do believe that there are direct claims here. Now, there was a concession at oral argument. Oral argument was extensive, and in many points, having read the transcript repeatedly, it seems like the court and a vocal plaintiffs were talking sideways, ships passing in the night. There is clearly the opportunity to have a direct claim here. That is why the- Where in your brief do you tell us that, precisely? For example, beginning on 30, excuse me, 36 and going through 42, but one area. Okay. And granted, it is not as clear as you or I would like, but we're talking about- We had time to think about, was it oral argument? There was time to do that, your honor. However, like I said, it was like two smart people talking across each other. This is a brief to this court. You're not talking past us. This is your chance to tell us why you had a direct claim and that you were prevented from asserting it. And I'm hoping that I find it. I don't see it just yet. I'm already to 38. Okay. You're telling me 36 to 42, that's where you're putting your money down, is that it? And page 22 of her reply, for example, the evoke a plaintiff's intent that direct conduct may be imputed to new care McGee. Okay, all right. Now- That's true in alter ego, right? That is true in alter ego. Now- So you're something different than that? But what we are asserting is that we have indirect claims under our theory that there is no harm to the debtors. And that's why we're out of the trust derivative claim definition, which I'd like to talk about. But also, there is this post 2001 activity. After 2001, there's an assumption of liability, and then there is interaction between New Care McGee and the EPA. There's a letter from New Care McGee to the EPA in 2002, December 2002, where they're discussing the evoke a plan and New Care McGee is saying, it's our plan. This is what we're going to do to remediate. So at the very least, this court should modify the decision below to allow for direct claims that are post 2001. The district court went beyond just enforcing an injunction. There were unasserted claims, and the court said, you can't even bring up any unasserted claims, even if they would have been something had we enforced the injunction on what was before the court. We could have gone in and asserted other claims in Pennsylvania. If the court had just said, I'm enforcing the injunction, no indirect claims. We would have been free without being in contempt to modify the amended complaint and assert direct claims, and we have them. And we're asking for this court to perhaps grant in part and reverse in part or reverse and send it back for additional fact finding so that we can present an amended complaint. So we can actually get off on the right foot with regard to the claims that we'd like to assert in Pennsylvania. Thank you, Mr. McGrath. We'll reserve decision.